## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **WILLIAM MOTT**, *on behalf of himself and all others similarly situated*, | Civil Case No.: _____ |
| | **COMPLAINT - CLASS ACTION** |
| *Plaintiff*, | **JURY TRIAL DEMANDED** |
| v. | |
| **PROPERTY PROBLEM SOLVERS, LLC,** | |
| *Defendant*. | |

## <u>INTRODUCTION</u>

1.      This action arises out of the illegal marketing practices of Defendant, Property Problem Solvers, LLC ("PPS" or "Defendant") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.      PPS makes, or has made on its behalf, telemarketing calls soliciting its real estate services.

3.      These calls are made to cell phones using an artificial or prerecorded voice, without the prior express consent of consumers.

4.      The TCPA prohibits making calls to cellular telephone numbers using an artificial or prerecorded voice without the prior express consent.

5.      Accordingly, Mr. Mott brings this action on behalf of himself and a

class of similarly situated individuals.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

7.    This Court has jurisdiction over PPS because PPS conducts business transactions in this District and made calls into this District targeting residents of this District as part of the business it conducts in this District.

8.    Specifically, PPS targeted a resident of this District who's cellular telephone number has an area code (i.e., 678) that is associated with this District – confirming that Defendant *knew* it was calling into this District.

9.    Venue is proper in this District because Defendant targeted a resident of this District and called into this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

10.    Plaintiff William Mott ("Mr. Mott") is, and at all times mentioned herein was, a citizen and resident of Gainesville, Georgia.

11.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

12.    PPS is, and at all times mentioned herein was a limited liability company organized and existing under the laws of the state of Georgia with a

principal office address located at 3000 Langford Road, Building 100, Peachtree Corners, GA 30071.

13.    PPS may be served via its registered agent, James P. Blum, Jr., located at 3000 Langford Road, Building 100, Peachtree Corners, GA 30071.

14.    PPS is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

15.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

16.    Relevant here, section 227(b)(1)(A)(iii) of the TCPA sets forth restrictions on the use of automated telephone equipment and prerecorded voice calls, and provides in pertinent part:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A)    to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using

any automatic telephone dialing system or an artificial or prerecorded voice—

*****

(iii)    to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

17.    A violation of 47 U.S.C. § 227(b)(1)(A)(iii) carries statutory damages of $500 to $1,500 per call.  *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

18.    Mr. Mott is the user of his personal cellular telephone number (678)-XXX-7560.

19.    On October 22, 2024, Mr. Mott received a prerecorded telephone call from PPS.

20.    The call came from telephone number (229) 258-0814.

21.    The call left the following prerecorded voicemail message on Mr. Mott's voicemail:

> Hi. This is Eleonor at Property Problem Solvers. I'm calling to see if you would like to sell your property and if you're interested in seeing what it qualifies for.  Uh, if you are, if you could please give me a call back on this telephone number.  Uh, thank you and have a good day.

22.    On November 19, 2024, Mr. Mott received another prerecorded call from PPS.

23.    The call came from telephone number (929) 269-8697.

24.    The call left the following prerecorded voicemail message on Mr.

Mott's voicemail:

> Hi. This is Eleonor at Property Problem Solvers. I'm
> calling to see if you would like to sell your property and if
> you're interested in seeing what it qualifies for.  Uh, if you
> are, if you could please give me a call back on this
> telephone number.  Uh, thank you and have a good day.

25.    On November 20, 2024, Mr. Mott received another prerecorded call

from PPS.

26.    The call came from telephone number (678) 729-9924.

27.    The call left the following prerecorded voicemail message on Mr.

Mott's voicemail:

> Hi. This is Eleonor at Property Problem Solvers. I'm
> calling to see if you would like to sell your property and if
> you're interested in seeing what it qualifies for.  Uh, if you
> are, if you could please give me a call back on this
> telephone number.  Uh, thank you and have a good day.

28.    On January 2, 2025, Mr. Mott received another prerecorded call from

PPS.

29.    The call came from telephone number (678) 679-4538.

30.    The call left the following prerecorded voicemail message on Mr.

Mott's voicemail:

> Hi. This is Eleonor at Property Problem Solvers. I'm

> calling to see if you would like to sell your property and if you're interested in seeing what it qualifies for. Uh, if you are, if you could please give me a call back on this telephone number. Uh, thank you and have a good day.

31.    On January 9, 2025, Mr. Mott received another prerecorded call from PPS.

32.    The call came from telephone number (929) 269-8697.

33.    The call left the following prerecorded voicemail message on Mr. Mott's voicemail:

> Hi. This is Eleonor at Property Problem Solvers. I'm calling to see if you would like to sell your property and if you're interested in seeing what it qualifies for. Uh, if you are, if you could please give me a call back on this telephone number. Uh, thank you and have a good day.

34.    On January 10, 2025 at 5:26pm, Mr. Mott received another prerecorded call from PPS.

35.    The call came from telephone number (929) 269-8697.

36.    The call left the following prerecorded voicemail message on Mr. Mott's voicemail:

> Hi. This is Eleonor at Property Problem Solvers. I'm calling to see if you would like to sell your property and if you're interested in seeing what it qualifies for. Uh, if you are, if you could please give me a call back on this telephone number. Uh, thank you and have a good day.

37.    On January 10, 2025 at 6:01pm, Mr. Mott received another prerecorded

call from PPS.

38.    The call came from telephone number (678) 750-1479.

39.    The call left the following prerecorded voicemail message on Mr.
Mott's voicemail:

> Hi. This is Eleonor at Property Problem Solvers. I'm
> calling to see if you would like to sell your property and if
> you're interested in seeing what it qualifies for.  Uh, if you
> are, if you could please give me a call back on this
> telephone number.  Uh, thank you and have a good day.

40.    Upon information and belief, PPS blasts out thousands of prerecorded
telemarketing messages in an effort to generate return calls from consumers that may
be interested in PPS's real estate services.

41.    Upon information and belief, PPS obtains lists of telephone numbers of
consumers that did not consent to be called.

42.    For example, numerous consumers have complained about PPS'
unwanted calls on its Better Business Bureau[1] site:



[1] See https://www.bbb.org/us/ga/atlanta/profile/house-flipping/property-problem-solvers-llc-0443-28179888/complaints (last accessed Jan. 13, 2025).

7

 **Initial Complaint**
10/24/2023

**Complaint Type:** Order Issues
**Status:** Answered

Company continues to send repeated phone calls and
letters attempting to buy family property, that is not for sale,
for an insultingly low price. They have been asked
repeatedly to leave us alone and continue calling and
sending letters. We have even stated we are on the Do Not
Call list.

43.    Mr. Mott did not provide prior express invitation or permission or consent for the telephone calls he received.

44.    PPS' violations were, at a minimum, negligent.

45.    Alternatively, PPS's violations were willful and knowing.

46.    Mr. Mott and the class were damaged by the violations alleged herein. In addition to using their cellular data, storage, and battery life, they suffered an invasion of privacy, aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls.  Their privacy was improperly invaded, the PPS calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted telephone calls.  PPS's telephone calls were annoying and a nuisance and wasted the time of Mr. Mott and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

8

## DEFENDANT'S LIABILITY

47.    Upon information and belief, PPS used automated systems to make outbound telephonic sales calls that utilized an artificial or prerecorded voice to hundreds if not thousands of consumers' cellular telephones across the U.S.

48.    Accordingly, for violations of 47 U.S.C. § 227(b), Mr. Mott is entitled to $500 per call.  *See* 47 U.S.C. § 227(b)(3).

49.    Mr. Mott is entitled to $1,500 per call if PPS' actions are found to be knowing or willful.

50.    PPS, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

51.    To the extent PPS outsourced its illegal robocalling, it is still liable for calls that violate the TCPA.

52.    PPS is liable for third-parties' actions because it took steps to cause the calls to be made, and because the calls were made pursuant to PPS's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

53.     On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

54.     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

55.     Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of the proposed "Class," as defined as follows:

Plaintiff and all persons and entities throughout the United States to whom PPS placed a call, or had a call placed on its behalf, directed to a number assigned to a cellular telephone service, with an artificial or prerecorded voice, from four years prior to the date of this class action complaint through the date of class certification.

57.    Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

58.    The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

59.    The Defendant's records will reveal the precise number of class members.

60.    The exact number and identities of the people who fit within the Class are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

> a.  The time period(s) during which Defendant or its agent(s) made the telephone calls;
>
> b.  The telephone numbers to which Defendant or its agent(s) made telephone calls;

11

    c.  The telephone numbers for which Defendant had prior express written consent;

    d.  The purposes of such telephone calls; and

    e.  The names and addresses of Class members.

61.    Upon information and belief, the Class is comprised of hundreds, if not thousands, of individuals.

62.    There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

    a.  Whether Defendant (or someone acting on its behalf) makes telemarketing calls;

    b.  Whether Defendant uses artificial or prerecorded voices to make its telemarketing calls to cellular telephones;

    c.  Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

    d.  Whether Defendant had "prior express consent" under the TCPA to call the cell phone numbers of Plaintiff and Class Members;

    e.  Whether Defendant's statutory violations were willful and knowing; and

    f.  Whether Defendant should be enjoined from engaging in such conduct in the future.

63.     Plaintiff is a member of the Class in that Defendant placed a call to his cellular telephone number that utilized artificial or prerecorded voices, without his prior express written consent.

64.     Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

65.     Plaintiff and all putative Members of the Class have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Class spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

66.     Plaintiff has no interests antagonistic to, or in conflict with, the Class.

67.     Plaintiff is an adequate representative of the Class and will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent him and the Class.  Plaintiff is prepared to participate in discovery and depositions and otherwise fulfill his obligations as a class representative.

68.     Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

69.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

70.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

71.    Common questions will predominate, and there will be no unusual manageability issues.

### FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. 227(b)
### (On Behalf of Plaintiff and the Prerecorded Call Class)

72.    PPS violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed to Mr. Mott's cellular telephone number, for non-emergency purposes and without his consent.

73.    As a result of PPS's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Mr. Mott and the members of the class are entitled to damages in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant as set forth in the Prayer for Relief below.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      An order certifying the Class as defined above, appointing Plaintiff as the representatives of the Class and appointing his counsel as Class Counsel;

B.      An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.      An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.      An award of statutory damages;

E.      An award of treble damages; and

F.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** January 14, 2025

/s/John A. Love
John A. Love, Esq.
Love Consumer Law
2500 Northwinds Parkway
Suite 330
Alpharetta, Georgia 30009
(404) 855-3600
tlove@loveconsumerlaw.com

Max S. Morgan, Esquire*
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

(*pro hac vice application forthcoming)